## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,            )
                                     )
    Plaintiff,                       )
                                     )
        v.                           )
                                     )    Civil Action No.
ENBRIDGE ENERGY, LIMITED             )    Judge
PARTNERSHIP and                      )
ENBRIDGE PIPELINES (SOUTHERN         )
LIGHTS), L.L.C.,                     )
                                     )
    Defendants.                      )

### COMPLAINT

Plaintiff, the United States of America ("United States"), by the authority of the Attorney General of the United States of America, on behalf of the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), and by and through its undersigned attorneys, alleges the following:

### NATURE OF THE ACTION

1.    This is a civil action brought pursuant to Section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), for assessment of civil penalties against Defendants.

2.    Defendants are liable under Section 309(b) both because they violated Section 301 of the CWA, 33 U.S.C. § 1311, and because they violated the conditions or limitations of a National Pollutant Discharge Elimination ("NPDES") permit issued by the Minnesota Pollution Control Agency ("MPCA") under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to Sections 309(b) and 505(a) of the CWA, 33 U.S.C. §§ 1319(b), 1365(a), and 28 U.S.C. §§ 1331, 1345, and 1355.

4.    Venue is proper in the District of Minnesota pursuant to Sections 309(b) and 505(c) of the CWA, 33 U.S.C. §§ 1319(b), 1365(c), and 28 U.S.C. §§ 1391(b), 1395(a), because Defendants are located in this District and the causes of action alleged in this complaint occurred in this District.

5.    The United States has provided notice of this action to the State of Minnesota as required by Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

6.    Authority to bring this civil action is vested in the Attorney General of the United States pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

## PARTIES

7.    Plaintiff, the United States, is acting at the request and on behalf of the Administrator of the United States Environmental Protection Agency ("Administrator").

8.    Defendant Enbridge Energy, Limited Partnership controls the "Alberta Clipper Pipeline," a 36" pipeline that transports crude oil from Alberta, Canada to a terminal in Wisconsin. Enbridge Energy, Limited Partnership is organized under the laws of the State of Delaware with an office in Duluth, Minnesota.

9.    Defendant Enbridge Pipelines (Southern Lights), L.L.C. controls the "Southern Lights Diluent Pipeline," a 20" pipeline running adjacent and parallel to the Alberta Clipper

pipeline that transports light hydrocarbons from Illinois to Alberta, Canada.  Enbridge Pipelines (Southern Lights), L.L.C. is organized under the laws of the State of Delaware with an office in Duluth, Minnesota.

10.     The Defendants are affiliated and will henceforth be referred to collectively as "Enbridge."

## STATUTORY AND REGULATORY BACKGROUND

11.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator to commence a civil action for appropriate relief when any person violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

12.     Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the issuer of an NPDES permit shall prescribe the permit conditions that it determines are necessary to carry out the provisions of the CWA.

13.     At all times relevant to this complaint, Minnesota has been and continues to be authorized by the Administrator to implement the NPDES permit program for discharges into navigable waters within its jurisdiction pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

14.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge" of "any pollutants" into "navigable waters" by any "person" except in compliance with a NPDES permit issued by the U.S. EPA or an authorized state pursuant to Section 402(b) of the CWA, 33 U.S.C. § 1342(b).

15.     Section 502(7) of the CWA, 33 U.S.C. § 1362 (7), defines "navigable waters" as "the waters of the United States… "  This includes: 1)  all waters which are currently used, were

used in the past, or may be susceptible to use in interstate or foreign commerce, including all waters which are subject to the ebb and flow of the tide; 2) all interstate waters, including interstate "wetlands," and 3) all "tributaries of these waters" and "wetlands adjacent to the foregoing waters." 40 C.F.R. § 122.2.

16.     The U.S. Army Corps of Engineers has designated certain waters in Minnesota as "navigable waters," under Section 10 of the Rivers and Harbors Act ("RHA"), 33 U.S.C. §403, including the Red River of the North and the Red Lake River.

17.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty of up to $25,000 per day for each violation occurring prior to January 31, 1997. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410, enacted October 5, 1990; 104 Stat. 890), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-134, enacted April 26, 1996; 110 Stat. 1321), U.S. EPA may seek civil penalties of up to $37,500 per day for each violation occurring after January 12, 2009.

## GENERAL ALLEGATIONS

18.     On June 18, 2009, Enbridge received a NPDES permit (Permit # MN0069426) from the MPCA for discharges of water associated with the hydrostatic testing of the Alberta Clipper pipeline and the Southern Lights Diluent pipeline.

19.     Hydrostatic testing is a process whereby a section of a pipeline is filled with water and subjected to pressure to verify the pipeline's structural integrity. The water is then discharged from the pipeline.

- 4 -

20.     The NPDES permit requires Enbridge to "maintain the discharge operation in such a manner so as to cause no erosion, scouring, sediment transport or other nuisance conditions in the area of the discharge or in the receiving stream." Chapter 3, Section 7.2 of the NPDES permit. In another section, the permit reiterates that Enbridge's discharge shall not cause any nuisance conditions, which, by incorporation of a Minnesota state rule, include but are not limited to: "floating solids, scum and visible oil film, acutely toxic conditions to aquatic life, or other adverse impact on the receiving water." Chapter 6, Section 1.4, of the NPDES permit (citing Minn. R. 7050.0210 subp.2).

21.     The permit, incorporating the Minnesota rule, requires that "[n]o sewage, industrial waste, or other wastes shall be discharged from either point or nonpoint sources into any waters of the state so as to cause any nuisance conditions, such as the presence of . . . excessive suspended solids, material discoloration, . . . ." Chapter 6, Section 1.1, of the NPDES permit (incorporating Minn. R. 7050.0210 subp. 2).

22.     The NPDES permit requires Enbridge to "submit a written request for authorization to discharge" that provides a range of information, including "the estimated average" discharge rate. Chapter 3, Section 2.10 of the NPDES permit.

23.     The permit and a Minnesota state rule provide that "[t]he Permittee shall perform the actions… authorized by the permit…in accordance with the plans and specifications approved by the Agency." Chapter 6, Section 1.2 of the NPDES permit (citing Minn. R. 7001.0150, subp. 3, item E).

24.     The permit provides that "[t]he Permittee shall conduct the discharge activity in accordance with the terms and conditions given in the project discharge approval letter. All

- 5 -

project discharge approval letters become an enforceable part of this permit." Chapter 3, Section 2.8 of the NPDES permit.

25.     On July 15, 2009, Enbridge submitted a letter and accompanying documentation to MPCA seeking approval of discharge plans associated with an upcoming hydrostatic testing event. On September 10, 2009, Enbridge submitted a revised table that summarized its proposed discharges and stated "[a]verage discharge rate will be 1400 gallons per minute (gpm)…"

26.     On September 18, 2009, MPCA approved the proposed discharges as described in Enbridge's September 10, 2009 table, with the exception of discharges to priority receiving waters. The letter cited concerns about whether the 1400 gpm average discharge rate would address scouring potential for those receiving waters.

27.     On September 29, 2009, MPCA sent Enbridge a subsequent letter approving the proposed discharges for all waters provided that Enbridge used best management practices and complied with additional conditions for priority receiving waters, discussed in Paragraph 28. As a proposed plan that was approved by the agency, the average discharge rate of 1400 gpm became an enforceable element of Enbridge's discharge permit. Chapter 3, Section 2.8 and Chapter 6, Section 1.2 of the NPDES permit; Minn. R. 7001.0150, subp. 3, item E.

28.     The CWA and the permit provide that MPCA has a right to prohibit discharges that will impair water quality. Section 302 of the CWA, 33 U.S.C. § 1312; Chapter 3, Section 2.3, of the NPDES permit.

29.     In its September 29, 2009 approval letter, the MPCA required that "measures be taken to ensure protection and preservation of existing water quality and other special characteristics" of a stretch of the Mississippi River designated as an Outstanding Resource Value Water. As a condition imposed by the agency in its approval letter, the requirement that

- 6 -

Enbridge take measures to ensure such protection became an enforceable element of its discharge permit. Chapter 3, Section 2.8 and Chapter 6, Section 1.2 of the NPDES permit; Minn. R. 7001.0150, subp. 3, item E.

30.     The MPCA's September 29, 2009 approval letter also required that measures be taken to "ensure the discharge does not cause an increase in turbid conditions" to the Clearwater River, which is on the CWA Section 303(d) list as impaired for turbidity. Specifically, the approval letter required a reduction in discharge velocity to "ensure no potential for erosion, scouring, or transport of sediments to receiving waters." As a condition imposed by the agency, the requirement that Enbridge take measures to ensure such protections became an enforceable element of its discharge permit. Chapter 3, Section 2.8 and Chapter 6, Section 1.2 of the NPDES permit; Minn. R. 7001.0150, subp. 3, item E.

## CLAIM FOR RELIEF

31.     Paragraphs 1 through 30 are realleged and incorporated herein by reference.

32.     *Incident 1:* On January 14-15, 2010, Enbridge discharged hydrostatic test water at Test Section 6B/Milepost 939.70 from the 36" pipe through an energy dissipater in a strawbale structure. Discharged water by-passed plastic sheeting and caused an erosion gully in the hillside measuring 50-60' long to 15' wide and 10' deep. This erosion led to the deposition of sediment in Wetland w-8r939b and the Mississippi River. Sediment deposits covered approximately 4500 square feet with a depth of deposits approaching 1 foot in the thickest areas. In addition to the sediment deposition, rust-colored water also entered the Mississippi River.

33.     The January 14-15, 2010 discharge caused nuisance conditions, caused erosion, and exceeded the 1400 gpm average discharge limit by 215%. These violations also establish a failure to take measures necessary to ensure protection of existing water quality of a stretch of

- 7 -

the Mississippi River designated as an Outstanding Resource Value Water. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

34.     *Incident 2:* On January 19-20, 2010, Enbridge discharged hydrostatic test water at Test Section 5/Milepost 875.40 from the 36" pipe through an energy dissipater in a strawbale structure located in a soybean field. The discharge washed away the topsoil of the field and a conveyance was formed across the field, causing extensive erosion. The turbid, discolored water entered Wetland W-875B and the Clearwater River.

35.     The January 19-20, 2010 discharge caused nuisance conditions, caused erosion, and exceeded the 1400 gpm average discharge limit by 136%. These violations also establish a failure to take measures necessary to ensure that the discharge did not cause an increase in turbid conditions in the Clearwater River, which is on the CWA Section 303(d) list as impaired for turbidity. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

36.     *Incident 3:* On February 6-8, 2010, Enbridge discharged hydrostatic test water at Test Section 7B/Milepost 939.70 from both the 36" and 20" pipes through an energy dissipater in a strawbale structure. Discolored water left the structure, flowing into wetland W-8r939B and the Mississippi River.

37.     The February 6-8, 2010 discharge caused nuisance conditions. These violations also establish a failure to take measures necessary to ensure protection of existing water quality of a stretch of the Mississippi River designated as an Outstanding Resource Value Water. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

38.    *Incident 4:* On Feburary 16-19, 2010 Enbridge discharged hydrostatic test water at Test Section 8/Milepost 939.70 from both the 36" and 20" pipes. A surge of air accompanied the release of red, rust-stained water at the end of the dewatering. The discolored water flowed into Wetland W-8r939B and the Mississippi River.

39.    The February 16-19 discharge caused nuisance conditions and exceeded the 1400 gpm average discharge limit by 48%. These violations also establish a failure to take measures necessary to ensure protection of existing water quality of a stretch of the Mississippi River designated as an Outstanding Resource Value Water. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

40.    *Incident 5*: On February 24, 2010, Enbridge discharged hydrostatic test water at Test Section 11/Milepost 1046.00 from its 20" pipe into an energy dissipater. Discolored water flowed into the East Savanna River.

41.    The February 24 discharge caused nuisance conditions and exceeded the 1400 gpm average discharge limit by 70%. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

42.    *Incident 6*: On February 23-26, 2010, Enbridge discharged hydrostatic test water at Test Section 12/Milepost 1076.20 from its 36" pipe through an energy dissipater located directly in Chub Lake at a hole cut in the ice. At the end of the discharge, a surge of air caused the discharge of rust-colored water into Chub Lake before the crew was able to divert the remaining water into a tank for dewatering at an approved location. The turbid, rust-colored water that was released flowed into Chub Lake.

43.     The February 23-26, 2010 discharge caused nuisance conditions and exceeded the 1400 gpm average discharge limit by 40%. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

44.     *Incident 7*: On February 9-10, 2010, Enbridge discharged hydrostatic test water at Test Section 13/Milepost 1076.1 from its 20" pipe. A surge of air caused rust to spray out of the pipe, leaving rust-colored ice on Chub Lake.

45.     The February 9-10, 2010 discharge caused nuisance conditions and exceeded the 1400 gpm average discharge limit by 9%. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

46.     *Incident 8*: On February 26-28, 2010, Enbridge discharged hydrostatic test water at Test Section 13/Milepost 1076.1 from its 20" pipe through a steel pipe running directly into Chub Lake through a hole cut in the ice. Near the end of the discharge, a surge of air caused the discharge pipe to buckle and "pop" out of the lake, spraying rust-colored water over a 100' diameter area of snow covering Chub Lake. The crew was able to remove some, but not all, of the discolored snow.

47.     The February 26-28, 2010 discharge caused nuisance conditions and exceeded the 1400 gpm average discharge limit by 46%. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

48.     *Incident 9:* On October 13, 2009, Enbridge discharged hydrostatic test water at Test Section Red River HDD/Milepost 802 from the 36" pipe through a filter bag located in an agricultural field. Flow leaving the filter bag caused erosion, which displaced 1-yard of topsoil and caused rills, or shallow erosion channels, of 1-2". Sediment flowed into wetland W-801a and the Red River of the North.

- 10 -

49.     The October 13, 2009 discharge caused erosion.  As such, Enbridge violated the

terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

50.     *Incident 10:* On November 19-21, 2009, Enbridge discharged hydrostatic test

water at Test Section 3B/Milepost 864.3 from the 36" pipe.  The discharge water flowed into the

Red Lake River.

51.     The November 19-21, 2009 discharge exceeded the 1400 gpm average discharge

limit by 14%.  As such, Enbridge violated the terms and conditions of its NPDES permit and

Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

52.     *Incident 11*: On December 16-17 2009, Enbridge discharged hydrostatic test

water at Test Section 6B/Milepost 939.7 from both the 20" and 36" pipes.  The discharge water

flowed into Wetland W-8r939B and the Mississippi River.

53.     The December 16-17, 2009 discharge exceeded the 1400 gpm average discharge

limit by 157%.  These violations also establish a failure to take measures necessary to ensure

protection of existing water quality of a stretch of the Mississippi River designated as an

Outstanding Resource Value Water.  As such, Enbridge violated the terms and conditions of its

NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

54.     *Incident 12:* On November 30, 2009 through December 1, 2010, Enbridge

discharged hydrostatic test water at Test Section 7A/Milepost 939.7 from both its 20" and 36"

pipes.  The discharge water flowed into Wetland W-8r939B and the Mississippi River.

55.     The November 30, 2009 through December 1, 2010 discharge exceeded the 1400

gpm average discharge limit by 88%.  That violation also establishes a failure to take measures

necessary to ensure protection of existing water quality of a stretch of the Mississippi River

designated as an Outstanding Resource Value Water. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

56. *Incident 13:* On November 20, 2009, Enbridge discharged hydrostatic test water at Test Section 9/Milepost 1009.8 from its 20" pipe. The discharge water flowed into Wetland W-8r1010C and the Prairie River.

57. The November 20, 2009 discharge exceeded the 1400 gpm average discharge limit by 64%. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

58. *Incident 14:* On November 17-18, 2009, Enbridge discharged hydrostatic test water at Test Section 9/Milepost 1009.8 from its 36" pipe. The discharge water flowed into Wetland W-8r1010C and the Prairie River.

59. The November 17-18, 2009 discharge exceeded the 1400 gpm average discharge limit by 206%. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

60. *Incident 15:* On February 5-7, 2010, Enbridge discharged hydrostatic test water at Test Section 10/Milepost 1009.8 from its 36" pipe. The discharge water flowed into Wetland W-8r1010C and the Prairie River.

61. The February 5-7, 2010 discharge exceeded the 1400 gpm average discharge limit by 46%. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

62. *Incident 16:* On February 27-28, 2010, Enbridge discharged hydrostatic test water at Test Section 12/Milepost 1046 from its 20" pipe. The discharge water flowed into the East Savanna River.

63.     The February 27-28, 2010 discharge exceeded the 1400 gpm average discharge limit by 57%. As such, Enbridge violated the terms and conditions of its NPDES permit and Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

64.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendants are liable for civil penalties of up to $37,500 per day for each day of violation of the Clean Water Act, as described above.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

1.  Order the Defendants to pay the United States its costs of this action;

2.  Order the Defendants to pay a civil penalty of up to $37,500 per day for each day of violation of the Clean Water Act,  as described above.

3.  Grant the Plaintiff such further relief as the Court deems just and proper.

Respectfully submitted,

ROBERT G. DREHER
Acting Assistant Attorney General,
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

B. TODD JONES
United States Attorney
District of Minnesota

Dated    07-16-2013

THOMAS A. MARIANI, JR.
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

Dated July 23, 2013

KATHERINE A. ABEND
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044
Telephone: (202) 514-2463
Facsimile: (202) 616-6584

Dated July 25, 2013

FRIEDRICH A. P. SIEKERT
Assistant U. S. Attorney
District of Minnesota
Minn. Attorney ID No. 0142013
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55414
Telephone: (612) 664-5697
Facsimile: (612) 664-5788
Fred.Siekert@usdoj.gov

- 14 -

OF COUNSEL:

MONESH CHABRIA
Associate Regional Counsel
U.S. Environmental Protection Agency - Region 5
77 W. Jackson Blvd. (C-14J)
Chicago, Illinois  60604